**No. 21-17036**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

EDWARD BATON; NAEEM SEIRAFI; ABRAHAM VILINGER; ANTHONY COMILLA; BRETT DEENEY, individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants,*

v.

LEDGER SAS; SHOPIFY (USA) INC.; SHOPIFY INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of California, San Francisco,
No. 3:21-cv-02470-EMC, Hon. Edward M. Chen

### LEDGER SAS'S PETITION FOR PANEL REHEARING

PURVI G. PATEL
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017

MARK DAVID MCPHERSON
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, NY 10019

JAMES R. SIGEL
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Tel.: (415) 268-6948
JSigel@mofo.com

ADAM L. SORENSEN
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037

*Counsel for Defendant-Appellee Ledger SAS*

DECEMBER 15, 2022

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for Defendant-Appellee Ledger SAS states that Ledger SAS is a French corporation, has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Dated: December 15, 2022

s/ James R. Sigel

James R. Sigel

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ....................................................................i

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION ..................................................................................1

BACKGROUND ....................................................................................2

ARGUMENT ........................................................................................4

I.     PLAINTIFFS MUST DEMONSTRATE THAT ENFORCEMENT OF A FORUM SELECTION CLAUSE WOULD CONTRAVENE A STRONG PUBLIC POLICY...........................................................4

II.    PLAINTIFFS DID NOT ATTEMPT TO MEET THEIR BURDEN OF PROVIDING THAT LITIGATING THEIR CLAIMS IN FRANCE WOULD CONTRAVENE A STRONG CALIFORNIA PUBLIC POLICY .........................................................................................7

CONCLUSION ....................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Online, Inc. v. Super. Ct.*,
   90 Cal.App.4th 1 (2001) ...............................................................................5, 6, 8

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
   571 U.S. 49 (2013) ...............................................................................................4

*Doe 1 v. AOL LLC*,
   552 F.3d 1077 (9th Cir. 2009) .................................................1, 2, 5, 6, 7, 8, 9, 10

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ..............................................................................................4, 5

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) ...............................................................................9

*Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) .....................................................1, 2, 3, 4, 5, 8, 9

*Wimsatt v. Beverly Hills Weight etc. International, Inc.*,
   32 Cal.App.4th 1511 (1995) .................................................................................9

**Statutes**

Cal. Civ. Code § 1751 ...............................................................................................8

**Other Authorities**

Fed. R. App. Proc. 40(a)(2)........................................................................................1

**INTRODUCTION**

As this Court correctly concluded, all of Plaintiffs' claims against Ledger fall within the "extremely broad forum selection clauses" to which Plaintiffs agreed when they purchased Ledger's hardware wallets. Slip Op. 3-4. These clauses designate France, not California, as the forum for litigating any disputes related to the sale or use of Ledger's wallets. This Court, however, carved out a narrow subset of claims—those brought by "California resident plaintiffs bringing class action claims under California consumer law"—that could proceed in California court. Slip Op. 4. This Court held that enforcement of the forum-selection clauses as to this subset of claims would "violate[] California public policy against waiver of consumer rights under California's Consumer Legal Remedies Act." Slip Op. 4 (citing *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1084 (9th Cir. 2009)).

Rehearing is warranted because that conclusion "overlooked or misapprehended" applicable law. Fed. R. App. Proc. 40(a)(2). Given the strong federal policy favoring forum-selection clauses, parties opposing enforcement of such clauses "bear the burden" to show that litigating in the forum to which they agreed would violate a strong public policy of the state in which they sued. *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088, 1090 (9th Cir. 2018) (internal quotation marks omitted). This Court's decision in *Doe* illustrates that this burden, while "heavy," is not impossible to meet. *Doe*, 552 F.3d at 1083. There,

1

the plaintiffs satisfied their burden by pointing to a California decision expressly holding that requiring them to litigate their claims in Virginia state court would contravene California public policy. *Id.*

Plaintiffs here have not come close to meeting their burden to show that requiring them to litigate their claims in France would likewise contravene California's public policy. Instead, Plaintiffs have relied entirely on the contention that it was *Ledger's* obligation to demonstrate the inadequacy of the contractually designated forum. This Court's precedent forecloses Plaintiffs' effort to evade their burden. *E.g.*, *Advanced China Healthcare, Inc.*, 901 F.3d at 1090. Because Plaintiffs cannot demonstrate—and have not even *attempted* to demonstrate—that enforcement of the forum-selection clauses at issue here would violate California's public policy, all their claims against Ledger should be dismissed.

## BACKGROUND

Plaintiffs are five Ledger customers, only one of whom is a California resident, who purchased hardware wallets through Ledger's website. 3-ER-396; 3-ER-530–31. In making these purchases, Plaintiffs agreed to Ledger's privacy policy, sales terms and conditions, and software terms of use, which contain forum-selection clauses requiring customers to litigate disputes related to the sale or use of Ledger's wallets in French courts. 3-ER-349–50.

After Ledger was the victim of two data breaches, Plaintiffs filed this putative class action in California federal court. 3-ER-544–45. They alleged common-law claims and violations of various California, Georgia, and New York statutes, including California's Consumers Legal Remedies Act (CLRA) and Unfair Competition Law (UCL). 3-ER-574–93.

Ledger moved to dismiss on multiple grounds, including lack of personal jurisdiction and *forum non conveniens*. 3-ER-398–452. The district court dismissed on personal jurisdiction grounds without reaching Ledger's *forum non conveniens* argument. 1-ER-25.

This Court affirmed in part and reversed in part. It first held that the district court had erred in concluding that personal jurisdiction over Ledger was lacking. Slip Op. 2-3. Turning to *forum non conveniens*, this Court recognized that the "broad scope" of the applicable forum-selection clauses "encompass[] this lawsuit." Slip Op. 4; *see Advanced China Healthcare,* 901 F.3d at 1086 (where "clause covers 'any disputes . . . related to this Agreement,' it applies to any dispute that has some logical or causal connection to the parties' agreement") (emphasis omitted). This Court concluded these clauses required dismissal of the majority of Plaintiffs' claims. Slip Op. 4. But accepting an argument Plaintiffs advanced in their reply (Plaintiffs Reply Br. 34-35), this Court held these clauses were not enforceable "with respect to

Plaintiffs who are 'California resident plaintiffs bringing class action claims under California consumer law.'"  Slip Op. 4.

## ARGUMENT

## I.    PLAINTIFFS MUST DEMONSTRATE THAT ENFORCEMENT OF A FORUM SELECTION CLAUSE WOULD CONTRAVENE A STRONG PUBLIC POLICY

Where, as here, a forum-selection clause governs a plaintiff's claims, "'[o]nly under extraordinary circumstances unrelated to the convenience of the parties' should a motion to enforce a forum-selection clause be denied." *Advanced China Healthcare*, 901 F.3d at 1088 (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013)).  The plaintiff "must bear the burden" of showing that such extraordinary circumstances exist.  *Id.* at 1087 (quoting *Atl. Marine*, 571 U.S. at 64).

As relevant here, a plaintiff can meet that burden by making a "strong showing that . . . 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.'"  *Id.* at 1088 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).  Merely citing a state statute precluding waiver of a state right is insufficient, as ordinarily "the strong federal policy in favor of enforcing forum-selection clauses would supersede antiwaiver provisions in state statutes."  *Id.* at 1090.  Rather, "to prove that enforcement of such a clause 'would contravene a strong public policy of the forum

in which suit is brought,' the plaintiff must point to a statute or judicial decision that clearly states such a strong public policy." *Id.* (quoting *M/S Bremen*, 407 U.S. at 1090) (internal citation omitted).

This Court's decision in *Doe 1 v. AOL* demonstrates what a plaintiff must do to meet this burden—and illustrates how far short Plaintiffs have fallen here. In *Doe*, this Court confronted a forum-selection clause contained in the AOL Member Agreement that designated the "courts of Virginia" as the forum for litigating any claims arising between AOL and its members. 552 F.3d at 1078. The district court interpreted this clause to allow for the plaintiffs to file their claims in either state or federal court in Virginia, and it dismissed the complaint on that basis. *Id.* at 1081. This Court, however, disagreed, holding that "the plain meaning of the forum selection clause's designation of the 'courts of Virginia' is the state courts of Virginia." *Id.* at 1082.

Having construed the forum-selection clause in this manner, this Court then held that the plaintiffs had met their "heavy burden" to show that the clause was unenforceable because "California has declared 'by judicial decision' the same AOL forum selection clause at issue here contravenes a strong public policy of California." *Id.* at 1083 (quoting *M/S Bremen*, 407 U.S. at 15, 17). Specifically, the California Court of Appeal had, in a prior case, considered this exact forum-selection clause and held that compelling California consumers to litigate their claims against

AOL in Virginia state court was "contrary to California public policy." *Am. Online, Inc. v. Super. Ct.*, 90 Cal.App.4th 1, 5 (2001). First, the Court of Appeal concluded, given the AOL Member Agreement's choice-of-law provision, a Virginia state court would refuse to allow the plaintiffs to press their claims under the CLRA. *Id.* at 14-16. Complete preclusion of such claims was contrary to the state policy reflected in the CLRA's anti-waiver provision. *Id.* at 16. Second, the Court of Appeal examined Virginia's consumer protection laws and found they contained far fewer protections than California's. *Id.* at 17-18. Most significantly, Virginia law precludes consumer class actions, which the Court of Appeal held was contrary to California's public policy supporting consumer class actions. *Id.*

In *Doe*, this Court thus held that the plaintiffs had met their burden to show that enforcing a forum-selection clause designating Virginia state courts as the forum for litigating their dispute would violate an important public policy of California by pointing to a California decision holding exactly that. *Doe*, 552 F.3d at 1083-84. *Doe* did not thereby hold that forum-selection clauses could *never* be enforced in cases involving CLRA claims or California consumer-law class actions. Indeed, had this Court done so, its extended analysis of whether the AOL forum-selection clause allowed for suit in Virginia *federal* courts would have been unnecessary. *Id.* at 1081-82, *see also* Plaintiffs' Reply Br. 34 (acknowledging that *Doe's* holding turned on the fact that "the forum selected—Virginia state court—would force plaintiffs to

6

waive" their California rights).  Rather, *Doe*'s holding was necessarily contract- and forum-specific.  The California Court of Appeal had held that requiring these consumers to bring their claims in Virginia state court would violate California policy given how Virginia courts would treat those claims, and this Court held that this California decision deeming Virginia an inadequate forum sufficed to meet the plaintiffs' burden.  *Id.* at 1083-84.

## II. PLAINTIFFS DID NOT ATTEMPT TO MEET THEIR BURDEN OF PROVING THAT LITIGATING THEIR CLAIMS IN FRANCE WOULD CONTRAVENE A STRONG CALIFORNIA PUBLIC POLICY

Plaintiffs here can point to nothing similar that might satisfy their "heavy burden" of proving that enforcing their agreement to litigate their claims in France would "contravene[] a strong public policy of California."  *Doe*, 552 F.3d at 1083. Unlike Virginia, France authorizes consumer class actions, along with data-protection-related class actions.  *See* Ledger Br. 58; Law No. 2014-344 of 17 March 2014; Law No. 2016-1547 of 18 November 2016.  And unlike the CLRA claims in *Doe* that could not be pressed in Virginia court, nothing in the relevant agreements here precludes Plaintiffs from advancing their CLRA claims in French court.  Instead (and by contrast to the far broader forum-selection clauses), the agreements' choice-of-law clauses provide only that French law will control interpretation of the

agreements; they do not restrict the parties to French-law claims.[1]  Thus, as Ledger has acknowledged, "Ledger's Privacy Policy, the Sales Terms, and Ledger Live Terms do not preclude Plaintiffs from pursuing their claims under California law." 3-ER-427; Ledger Br. 58 (same); *see Advanced China Healthcare*, 901 F.3d at 1092 (relying on similar representation from the defendant).[2]

Plaintiffs have not even attempted to meet their burden of showing that enforcing their agreement to litigate in France would nevertheless contravene California's public policy.  *See* Plaintiffs Reply Br. 34-35; 2-ER-197.  Plaintiffs point to nothing in the record, or in French law, that suggests they would be unable to meaningfully pursue their claims in French court.  Nor, certainly, do they point to any California "judicial decision" expressly finding any procedural differences sufficiently material to contravene California's "strong public policy."  *Doe*, 552 F.3d at 1083.

Instead, Plaintiffs' effort to resist enforcement of the forum-selection clauses to which they agreed has rested entirely on an improper attempt to shift the relevant

---

[1]  *See* 3-ER-362 ("This Privacy Policy is governed by and interpreted according to French law."); 3-ER-373 ("These TC's are subject to French law."); 3-ER-392 ("These Terms will be governed by and interpreted in accordance with the laws of France.").

[2]  Ledger also notes that, even assuming Plaintiffs could demonstrate that French courts would preclude any and all California claims, the forum-selection clauses should still be enforced as to Plaintiffs' UCL claim (4-ER-577-81) because the CLRA's anti-waiver provision is limited to claims under the CLRA.  Cal. Civ. Code § 1751; *see America Online*, 90 Cal.App.4th at 15.

burden. Plaintiffs insist that "[i]t is Ledger's burden to show that enforcement of its forum selection clauses would not abridge the rights of California consumers." Plaintiffs' Reply Br. 35. In support, they cite a lone California Court of Appeal decision—*Wimsatt v. Beverly Hills Weight etc. International, Inc*., 32 Cal.App.4th 1511 (1995). *See* Plaintiffs Reply Br. 34-35. To be sure, *Wimsatt* did hold that the party seeking enforcement of a forum-selection clause bears the burden of showing that "litigation in the contract forum will not diminish" the plaintiff's rights. *Wimsatt*, 32 Cal.App.4th at 1522. But *Wimsatt* did so as a matter of *California* law, expressly rejecting the contrary federal-law approach this Court applies. *Id.*; *see id.* at 1520 ("[T]he substantive law of California governing the 'validity and enforceability' of forum selection clauses in franchise agreements presents an entirely different model than used by federal courts (at least in the Ninth Circuit).").

As this Court has repeatedly made clear, *federal* law controls the enforcement of forum-selection clauses in federal courts, even for state-law claims. *E.g.*, *Advanced China Healthcare*, 901 F.3d at 1090; *Doe*, 552 F.3d at 1083; *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). And as this Court has also repeatedly made clear, under federal law, it is Plaintiffs—not Ledger—who bear the burden of demonstrating that litigating in France would contravene a strong public policy of California. *E.g.*, *Advanced China Healthcare*, 901 F.3d at 1088; *Doe*, 552 F.3d at 1083; *Manetti-Farrow*, 858 F.2d at 514-15.

Plaintiffs did not come close to meeting that "heavy burden" here, despite having multiple opportunities to attempt to do so. *Doe*, 552 F.3d at 1083. As a result, the forum-selection clauses to which they agreed should be enforced as to *all* their claims—including the California consumer law class-action claims brought by California residents.

## CONCLUSION

For the foregoing reasons, rehearing should be granted, and the district court's judgment for Ledger should be affirmed in its entirety.

Dated: December 15, 2022

Respectfully submitted,

s/ James R. Sigel

PURVI G. PATEL
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017

MARK DAVID MCPHERSON
MORRISON & FOERSTER LLP
250 W. 55th Street
New York, NY 10019

JAMES R. SIGEL
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Tel.: (415) 268-6948
JSigel@mofo.com

ADAM L. SORENSEN
MORRISON & FOERSTER LLP
2100 L Street, NW, Suite 900
Washington, DC 20037

*Counsel for Defendant-Appellee Ledger SAS*

10

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 21-17036

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: | 2,166 |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ James R. Sigel | **Date** | Dec 15, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11** *Rev. 12/01/2021*

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 1 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EDWARD BATON; et al., | No.    21-17036 |
| Plaintiffs-Appellants, | D.C. No. 3:21-cv-02470-EMC |
| v. | |
| LEDGER SAS; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted November 14, 2022
San Jose, California

Before:  GRABER, TALLMAN, and FRIEDLAND, Circuit Judges.

Plaintiffs bought "hardware wallets" in which to store cryptocurrency assets.

They allege that a data breach exposed personal information that they had provided

in connection with their purchases.  Plaintiffs, on behalf of a putative class, sued

Ledger SAS, the French company that manufactured and sold the wallets; Shopify

Inc., the Canadian company that provided e-commerce services for Ledger's online

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

store; and Shopify (USA) Inc., a subsidiary of Shopify Inc. based in Delaware. The district court dismissed the action for lack of personal jurisdiction over Defendants, denied Plaintiffs' request for jurisdictional discovery, and denied Plaintiffs' request for leave to amend. Plaintiffs timely appeal. We review de novo the dismissal for lack of personal jurisdiction, Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015); for abuse of discretion the denial of jurisdictional discovery, LNS Enters. LLC v. Cont'l Motors, Inc., 22 F.4th 852, 858 (9th Cir. 2022); and for abuse of discretion the denial of leave to amend, Curry v. Yelp Inc., 875 F.3d 1219, 1228 (9th Cir. 2017). We affirm in part and reverse and remand in part.

1. The district court had specific personal jurisdiction over Ledger. The "purposeful availment" framework applies because Plaintiffs' claims are for negligence. Holland Am. Line Inc. v. Wärtsilä N. Am., Inc., 485 F.3d 450, 460 (9th Cir. 2007). Ledger has sold about 70,000 wallets directly to Californians, generating millions of dollars in revenue; its website is designed to collect the applicable California sales tax for buyers whose IP addresses are in California; and it ships the wallets directly to California addresses. Taken together, those facts suffice to establish purposeful availment because Ledger's contacts with the forum cannot be characterized as "random, isolated, or fortuitous." See Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984) (holding that the defendant's regular monthly

2

sales of thousands of magazines to New Hampshire residents created the necessary minimum contacts to support personal jurisdiction).

In addition, Plaintiffs' claims "arise out of" those sales. <u>Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.</u>, 141 S. Ct. 1017, 1025 (2021) (quoting <u>Bristol-Myers Squibb Co. v. Superior Ct.</u>, 137 S. Ct. 1773, 1780 (2017)). Buyers are required to disclose personal information in order to buy the wallets, Ledger retains those data for e-commerce and marketing purposes, the wallets are advertised as part of a larger security "ecosystem," and Plaintiffs allege that they would not have bought wallets had they known of Ledger's poor data security practices. <u>See</u> <u>Learjet, Inc. v. Oneok, Inc.</u> (<u>In re W. States Wholesale Nat. Gas Antitrust Litig.</u>), 715 F.3d 716, 742 (9th Cir. 2013) ("[A] lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." (quoting <u>Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.</u>, 103 F.3d 888, 894 (9th Cir. 1996))).

2. As noted, Plaintiffs' claims arise out of their purchase of Ledger wallets. To buy a wallet, a purchaser must agree to the Sales Terms and Conditions, which acknowledge that Ledger may collect personal data and which refer in turn to the Privacy Policy for details regarding Ledger's use of those data. In addition, users must agree to the Ledger Live Terms of Use when they begin to use the Ledger Live software. All three documents contain extremely broad forum selection

clauses providing that covered disputes will be subject to the exclusive jurisdiction of the French courts.[1]  The forum-selection clause in the Ledger Live Terms of Use, for example, covers "[a]ny dispute, controversy, difference or claim arising out of or relating to" the agreement.[2]  The broad scope of that clause encompasses this lawsuit.  See Yei A. Sun v. Advanced China Healthcare, Inc., 901 F.3d 1081, 1086–87 (9th Cir. 2018) (concluding that a forum-selection clause encompassing disputes "arising out of or related to" the agreement covered the suit because the dispute had a logical or causal connection to the agreement).

These forum-selection clauses are enforceable except with respect to Plaintiffs who are "California resident plaintiffs bringing class action claims under California consumer law." Doe 1 v. AOL LLC, 552 F.3d 1077, 1084 (9th Cir. 2009) (per curiam) (holding that a forum-selection clause was unenforceable because it violated California public policy against waiver of consumer rights under California's Consumer Legal Remedies Act).  Accordingly, we reverse the dismissal of Plaintiffs' California consumer law claims but otherwise affirm the dismissal of Plaintiffs' claims against Ledger.

---

[1]  All three documents also contain choice-of-law provisions that apply French law.

[2]  Plaintiffs do not argue that their claims stand in a different causal relationship to the Ledger Live Terms of Use than to the Privacy Policy or Sales Terms and Conditions.

3.  With respect to the Shopify Defendants, the district court correctly ruled that the present record does not support personal jurisdiction, but abused its discretion by disallowing any jurisdictional discovery and an opportunity to amend the complaint following jurisdictional discovery.  Shopify USA employs more than 200 people who work remotely from California.  One of those employees has the title of "Data Protection Officer" (DPO).  It is reasonable to infer that this employee may have played a role related to the data breach because he appears to have overseen the relevant privacy policies and Shopify's response.  The DPO's LinkedIn profile displays his title as "Vice President, Legal; Data Protection Officer."  His job duties include "[s]trategically advis[ing the] executive team, senior leaders, and Board of Directors," as well as "[s]erv[ing] as [the] company's Data Protection Officer, advising senior management, Board of Directors, and key teams within the company on issues relating to privacy, data protection, data usage, and cybersecurity."  These responsibilities plausibly relate to how Shopify would prevent and respond to a data breach.  Because more facts are needed to determine whether those activities support the exercise of jurisdiction, we reverse the district court's denial of jurisdictional discovery with respect to the DPO's role and responsibilities and his relationship to Shopify, Inc., which processed and stored the data.  See Laub v. U.S. Dep't of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003) (holding that the refusal to grant jurisdictional discovery was prejudicial where

there was a reasonable probability that the outcome of the motion would be different).

However, the district court permissibly denied as speculative discovery on other matters. See Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (upholding denial of request for jurisdictional discovery that was "based on little more than a hunch"). Following jurisdictional discovery, amendment of Plaintiffs' claims against the Shopify defendants would not necessarily be futile and so should be allowed. See Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.").

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART. Each party shall bear its own costs on appeal.**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system on December 15, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: December 15, 2022             _____ s/ James R. Sigel _____

                                                   James R. Sigel